IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELON SCRUGGS, ) ) Plaintiff, ) ) v. ) ) CITY OF FAIRVIEW HEIGHTS, ILLINOIS, ) OFFICER BELBA, SERGEANT PEEL, and ) NICK GAILIUS, ) ) Defendants. ) | Case No. 3:13-cv-1088-JPG-DGW |

# REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion to Dismiss filed by Defendants on November 5, 2013 (Doc. 5). For the reasons set forth below, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Complaint alleges that Plaintiff was arrested by Police Officer Belba and Sergeant Peel on October 16, 2011, after having committed no violation of the law, in furtherance of unconstitutional policies promulgated by Nick Gailius, the Chief of Police for the City of Fairview Heights, Illinois. Plaintiff brought suit under 28 U.S.C. § 1983 alleging that his Fourth Amendment rights were violated by the illegal arrest. This matter was removed to this Court on October 22, 2013 pursuant to this Court's federal question jurisdiction, 28 U.S.C. § 1331. (Doc. 2).

Plaintiff claims that he was a back-seat passenger of a car that was stopped by Defendants Belba and Peel in the early morning hours of October 16, 2011 for an alleged traffic infraction. During the "extended" stop, the police officers found a revolver in the car for which another passenger in the car, Mr. Ariel Coleman, was charged with possessing. The officers also allegedly suspected that the driver of the car, Mr. LaMont McGraw, Jr., fit the description of an armed robber who was wanted for the robbery of a pizza delivery man around Southern Illinois University, Edwardsville ("SIUE"), on the same evening. Plaintiff was nonetheless detained, strip-searched, and held for 2 days without probable cause – the Complaint does not specify for what reason he was arrested other than perhaps being the armed robbery suspect. The Complaint further states that the stop and subsequent detention was merely because of Plaintiff's race (African-American).

In particular, the Complaint alleges that:

1. "That the stop, arrest and jailing of the Plaintiff were performed by Peel and Belba without probable cause [or reasonable suspicion], pursuant to the practices and policies of Chief Gailius and the City of Fairview Heights." (Comp. ¶ 8).

2. "That Defendant Belba's police report on its face, shows the racial nature of the stop of the Plaintiff." (Comp. ¶ 13).

3. "At no time did the Plaintiff own or have actual or constructive possession of the weapon found in the car." (Comp. ¶ 16).

4. "That the Plaintiff was illegally strip searched and his body violated . . . ." (Comp. ¶ 26).

5. "Plaintiff was illegally jailed by all said defendants in a Fairview Heights Police Department hold over cell for two days." (Comp. ¶ 7).

Plaintiff alleges a wide-range of constitutional claims:

That his stop, arrest, detention and jailing were illegal and violative of his Fourth, Eighth, and Fourteenth Amendment rights, including his right against unreasonable

> search and seizure of his person, his right against warrantless searches, his right against stops and searches performed without reasonable suspicion or probable cause, his Eighth Amendment right against cruel and unusual punishment, and his Fourteenth Amendment right to substantive and procedural due process, and that said violations were committed pursuant to the policies, practice and procedure of the City of Fairview Heights, Illinois and of Chief Gailius.  (Comp. ¶ 26).

Plaintiff hedges, though, on the alleged illegality of the stop. He states, in order to be "clear," that if the police report is credited, then Mr. McGraw (the driver) should have only briefly been stopped for running a stop sign. (Comp. ¶ 17). Plaintiff further states that the police had no justification for an "extended" stop even though they detected an odor of an unknown substance and saw what looked to be marijuana on Mr. McGraw's clothes. (Comp. ¶ 18). And, the police would not have found the weapon but for the "illegal extended stop." (*Id.*). Plaintiff then states that the police should have "independent reasonable suspicion and or probable cause to hold, stop and frisk, search and/or detain each occupant who had been in the vehicle." (Comp. ¶ 19).

The police report attached to the Complaint (Doc. 5-1, p. 15-19)[1] states that Officer Belba stopped Mr. McGraw's vehicle because he observed it run a stop sign around 1:30 a.m. on October 16, 2011. When he approached and asked for Mr. McGraw's license and insurance, he observed Mr. McGraw with "red and glazed over" eyes, a "green leafy substance" on his clothes, and he "smelled a strong odor of an unknown aroma." Thinking that Mr. McGraw possessed marijuana, he told him to exit the car, patted him down for weapons, and asked him about the substance (Mr. McGraw indicated "he bought the stuff from the Sunshine Store, but it was legal and that's what he was smoking"). Officer Belba then told Plaintiff and Mr. Coleman to exit the vehicle and he patted them down for weapons. Officer Belba began to search the car and located two packages

---

[1] This police report was attached to the original complaint filed in state court but was erroneously excluded from the complaint when this matter was removed.

Page **3** of **13**

labeled "Super Kush" which he believed "could possibly be a variation of a K-2 product."[2] He also found a revolver under the front passenger seat. At that point, he handcuffed Plaintiff, Mr. Coleman, and Mr. McGraw and transported them to the police station. They were booked for Unlawful Use of a Weapon, strip searched (upon Officer Belba's request), and placed in a holding cell. It appears that the trio were then interviewed with respect to the armed robbery later in the morning by other police officers.

As a result of Defendants' actions, Plaintiff alleges that he lost his college football scholarship and that he has been unjustifiably barred from the SIUE campus. Plaintiff seeks a declaratory judgment that his rights were violated (Count 1), damages against Defendants Belba and Peel for violations of his constitutional rights (Counts 2 and 3), and damages against Defendants City of Fairview Heights and Gailius for promulgating and maintaining unconstitutional policies and practices (Counts 4 and 5). Defendants seek dismissal of the entire Complaint pursuant to Federal rule of Civil Procedure 12(b)(6).

### CONCLUSIONS OF LAW

On a defendant's motion to dismiss, all facts in the complaint are accepted as true. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

---

[2] Title 720 ILCS § 570/420 makes it a felony to "knowingly [ ] possess a controlled or counterfeit substance or controlled substance analog." A "'controlled substance analog' or 'analog' means a substance which is intended for human consumption, other than a controlled substance, that has a chemical structure substantially similar to that of a controlled substance . . . , or that was specifically designed to produce an effect substantially similar to that of a controlled substance . . . ." *Id.* "K2" appears to be such a controlled substance analog, being a synthetic form of marijuana which is intended to produce the effects of marijuana. *See* Jesssica Reaves, *Chicago News Cooperative; Illinois Bans K2, but that might not stop the bad trips*, N.Y. TIMES, January 2, 2011, http://query.nytimes.com/gst/fullpage.html?res=9D06EEDA1F39F931A35752C0A9679D8B63.

To state a cognizable claim, the complaint must provide enough detail to give defendants fair notice of the nature of the claim and the grounds upon which it rests and to show that relief is plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). Conclusory statements or the mere recitation of the elements of the cause of action are insufficient. *Id.* The pleading must contain factual allegations that "raise the right to relief above the speculative level." *Id.* at 555. In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court emphasized two underlying principles in *Twombly*: first, that legal conclusions stated in a complaint are not entitled to the assumption of truth reserved to factual allegations, and second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Factual plausibility exists when a plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" a defendant's liability "stop short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 544 U.S. at 557).

*Fourth Amendment Claims*

The Fourth Amendment provides that people have the right to be free from unreasonable searches and seizures and that "no Warrants shall issue, but upon probable cause." While

"advance judicial approval of searches and seizures through the warrant procedure" is preferred, *Terry v. Ohio*, 392 U.S. 1, 20 (1968), warrantless arrests are permitted for various reasons, including when an officer has probable cause to believe that a crime is being committed. *Tebbens v. Mushol*, 692 F.3d 807, 818 (7th Cir. 2012). Whether or not probable cause exists is generally a "fact intensive inquiry that does not lend itself to definitive legal rules . . . [and,] [w]hether an officer had probable cause to make an arrest generally will present a question for the jury . . . ." *Jones v. Webb*, 45 F.3d 178, 181-182 (7th Cir. 1995).

In making their argument, Defendants rely on the police report which details the reasons for the stop, the officers' suspicions, the found weapon and contraband, the details regarding the armed robbery suspect, and Plaintiff's physical description. Defendants argue that based on the police report (and Officer Belba's observation that the vehicle had run a stop sign), there was probable cause to stop the vehicle in which Plaintiff was a passenger. Essentially, because the facts contained in the police report would support probable cause to stop the vehicle and detain the Plaintiff, he has failed to state Fourth Amendment claim.

In *Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013), the Seventh Circuit approved of the District Court's reliance on a video recording attached to a complaint when it considered a motion to dismiss. The Court held that:

> In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim. The freedom includes exhibits attached to the complaint, Fed.R.Civ.P. 10(c), or documents referenced in the pleading if they are central to the claim. Taking all facts pleaded in the complaint as true and construing all inferences in the plaintiff' favor, we review the complaint and all exhibits attached to the complaint. *Id.* at 609 (internal citations, quotations, and editing marks omitted).

Federal Rule of Civil Procedure 10(c) provides that any "written instrument" attached to a

pleading is made a part thereof. For purposes of Rule 10(c) in relation to a Rule 12 motion to dismiss, a "written instrument" is read broadly to include "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). When documents are "cited" in the body of a complaint and "to some degree, relied on" to support a claim, the Court may consider the document in ruling on a motion to dismiss (without converting the motion into one for summary judgment). *Id.* However, merely attaching a police report does not necessarily mean that the Plaintiff "vouched for all the facts set forth in them." *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000). This Court's reliance on the facts contained in the police report would depend on whether those facts are used to support a claim and whether Plaintiff has challenged the veracity of the facts in the report. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

Plaintiff generally avers that the traffic stop was not based on probable cause and impliedly argues that the police officer stopped the car for no reason (other than the fact that the occupants were African-American). However, Plaintiff does not appear to specifically dispute the police officer's description of Mr. McGraw (the driver), the description of the drugs found in the car or their location, the particulars of the action that the police took in frisking Plaintiff, searching the car, finding the gun, subsequently arresting Plaintiff, subjecting him to a strip search, and holding him pending the armed robbery investigation. Rather, Plaintiff appears to argue that the officers should have had *independent* probable cause (or reasonable suspicion) to detain and search Plaintiff (i.e. independent from the initial traffic stop).

First, Plaintiff, as a passenger in such a vehicle, can claim that the stop was made in

violation of his Fourth Amendment rights. *See Brendlin v. California*, 551 U.S. 249, 257 (2007) (holding that when police officers pull a car over, "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission."). Thus, the stop itself must be pursuant to a warrant or at least based on probable cause that a crime was being committed. *Terry*, 392 U.S. at 20-21. The Complaint acknowledges, or at least infers, that a police report listed legitimate reasons to stop and detain the vehicle and its occupants: the initial traffic infraction followed by observation of suspected marijuana and a weapon (Complaint ¶ 15). However, Plaintiff goes on to allege and argue that the stop was not supported by probable cause because the officers stopped the car because the occupants are African-American. Therefore, whether the police officer had probable cause to stop the vehicle relies on facts that are best resolved on a motion for summary judgment.[3]

With respect to Plaintiff's arrest, in *Maryland v. Pringle*, 540 U.S. 366 (2003), the Supreme Court held that police had probable cause to arrest a passenger in a car where drugs were found: the passenger was in the front seat and the drugs were found "behind the backseat armrest." *Id.* at 368. The Court found that the drugs were "accessible to all three men" in the car and that a

---

[3] Plaintiff nonetheless goes on to assert that there must be some independent reason for the police officers to detain Plaintiff in particular, i.e. his initial detention cannot be based on the traffic infraction. Plaintiff has presented no case authority that would suggest that there must be independent probable cause to detain a passenger in a vehicle that is committing a traffic offense. *See e.g. Whren v. U.S.*, 517 U.S. 806, 809-810 (1996) (noting that all passengers in a vehicle were arrested following a traffic stop where the police officers observed drugs). Plaintiff further has no standing to challenge the search of the vehicle (which he does not appear to own) nor standing to challenge the seizure of the gun or the drugs (which he similarly disavows ownership). *See Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978) ("A person who is aggrieved by an illegal search and seizure only though the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). Therefore, in order to prevail on a claim that Plaintiff was initially detained without the benefit of probable cause, he must show that the traffic stop itself was constitutionally deficient.

reasonable officer could conclude that there was probable cause to believe that the passenger "committed the crime of possession of cocaine, either solely or jointly." *Id*. at 372. Such constructive possession can support probable cause to arrest. In this case, the drugs were found in the driver's side door compartment and the gun was found under the front passenger seat (Plaintiff was sitting directly behind the driver's seat). At that point, Plaintiff was arrested for unlawful use of a weapon.[4] Plaintiff claims that neither the car nor the gun were his and also that he had no access to the weapon and presumably did not know it was under the car seat. Such fact based conclusions are also best resolved on summary judgment.

Plaintiff also alleges that he was strip searched and detained for two days in violation of his Constitutional rights. Whether a given search is reasonable involves balancing various factors including the need of the search, the invasion of personal rights, the scope, manner in which it was conducted, and the place, among other things. *See Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007). The reasonableness of such searches necessarily requires a factual analysis. The reasonableness of a detention also is a factual inquiry. "The Fourth Amendment requires a judicial determination of probable case as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 113-114 (1975). Such a determination should be made "within 48 hours of arrest." *County v. Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). A delay beyond 48 hours is presumed unreasonable and must be rebutted by the government; whereas a delay of 48 hours or less is presumed reasonable unless a detainee can establish that the delay is nonetheless unreasonable. *Portis v. City of Chicago, Ill.*, 613 F.3d 702, 703-704 (7th Cir. 2010). Unreasonable delays can be those "delays for the purpose of gathering additional evidence to

---

[4] *See* 720 ILCS §5/24-1.

justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside*, 500 U.S. at 56. Defendants appear to argue that the mere fact that Plaintiff was released at or before the 48th hour means that he can have no Fourth Amendment claim. None of the cases cited above point to such a bright-line rule. *See e.g. Willis v. City of Chicago*, 999 F.2d 284 (7th Cir. 1993).

It is therefore **RECOMMENDED** that Plaintiff's Fourth Amendment claims should not be dismissed at this juncture.[5]

### *Eighth Amendment Claims*

The Eighth Amendment's prohibition against cruel and unusual punishment generally applies to those who have been convicted of a crime, not to those who have merely been arrested. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) ("Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following a conviction."); *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). There is no allegation that Plaintiff has been convicted of any crime. Indeed, it appears that he was released after being held for 2 days. Plaintiff's Eighth Amendment claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim.

### *Fourteenth Amendment Claims*

It is unclear to the Court what independent Fourteenth Amendment claim Plaintiff is

---

[5] Defendants only argue that Plaintiff cannot proceed on his municipal liability claims if his claims against the individual defendants are dismissed. Because this Court recommends that Plaintiff be allowed to proceed on his Fourth Amendment claims, the claims against Fairview Heights and Gailius should not be dismissed.

making. "The Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992). Any Fourteenth Amendment due process claims, whether substantive or procedural, are more properly stated as Fourth Amendment claims and would merely be duplicative thereof. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Plaintiff fails to articulate, either in his Complaint or in his response to the Motion to Dismiss, in what manner his due process rights were violated. However, Plaintiff does appear to assert an equal protection claim by claiming that he was stopped merely because he is African American. *See Whren v. United States*, 517 U.S. 806, 812-813 (1996) (holding that "the constitutional basis for objecting to intentional discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Plaintiff's due process claims should accordingly be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. Plaintiff, however should be allowed to proceed on his Fourteenth Amendment equal protection claim.

### *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quotation marks and citations omitted). And, "if officers of reasonable competence could

disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In determining whether Defendants are entitled to qualified immunity, the Court must consider two questions: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, 2. was "the right clearly established?" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier*, 533 U.S. at 201; *See also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). As indicated above, various factual questions may arise in this lawsuit. Therefore, whether Defendants are entitled to qualified immunity should be addressed once the factual record has been developed.

RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**. In particular, this Court **RECOMMENDS** that:

1. Plaintiff be allowed to proceed on his Fourth Amendment Claims against Belba and Peel, in their individual capacity, and Fairview Heights and Galius, in their official capacity.

2. Plaintiff's Eighth Amendment claims be **DISMISSED WITH PREJUDICE**.

3. Plaintiff's Fourteenth Amendment due process claims be **DISMISSED WITHOUT PREJUDICE**. Plaintiff should be allowed to proceed on his Fourteenth Amendment equal protection claim against Belba and Peel, in their individual capacity, and Fairview Heights and Galius, in their official capacity.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 25, 2014**

                                        **DONALD G. WILKERSON**
                                        **United States Magistrate Judge**